WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angel Soto,<br><br>               Plaintiff,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>               Defendants. | No. CV 14-1323-PHX-SMM (MEA)<br><br>**O R D E R** |

On June 13, 2014, Plaintiff Angel Soto, who is confined in the Arizona State Prison Complex-Eyman in Florence, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1). On August 21, 2014, this Court issued an Order to Show Cause why Counts One and Two of the Complaint should not be dismissed as time-barred. On September 3, 2014, Plaintiff filed a timely response to the Order to Show Cause. Because Plaintiff has adequately alleged a recognized basis for tolling the statute of limitations, the Court will require a response to certain portions of the Complaint, as set forth below. Defendant Ryan, Defendant Banghart, and Count Two of the Complaint will be dismissed for failure to state a claim.

I. **Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon

TERMPSREF

1  which relief may be granted, or that seek monetary relief from a defendant who is
2  immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

3        A pleading must contain a "short and plain statement of the claim *showing* that the
4  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8
5  does not demand detailed factual allegations, "it demands more than an unadorned, the-
6  defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
7  (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere
8  conclusory statements, do not suffice."  *Id.*

9        "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
10  claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,
11  550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual
12  content that allows the court to draw the reasonable inference that the defendant is liable
13  for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible
14  claim for relief [is] . . . a context-specific task that requires the reviewing court to draw
15  on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's
16  specific factual allegations may be consistent with a constitutional claim, a court must
17  assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.*
18  at 681.

19        But as the United States Court of Appeals for the Ninth Circuit has instructed,
20  courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338,
21  342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less
22  stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v.*
23  *Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

24  **II.**    **Complaint**

25        In his two-count Complaint, Plaintiff names the following Defendants: Arizona
26  Department of Corrections ("ADOC") Director Charles Ryan, Sergeant Sweetman, CO II
27  Zamora, CO II Gutierrez, SSU Banghart, CO II Ramirez, CO II Harris, CO II Jones, CO
28

II Schell, CO II Emore, CO II Rodriguez, Sergeant Victoria, CO II Bope, Sergeant Swaney, and Sergeant McClellan.  Plaintiff seeks a declaratory judgment and damages.

In Count One, Plaintiff asserts a claim of excessive force, alleging that he "requested suicide watch treatment" after explaining to staff that he had stopped taking his medications and was experiencing paranoid psychosis.  According to the Complaint, instead of treating Plaintiff, "Defendant(s) brutally attacked [him] and used torture."  Defendants placed Plaintiff in hand cuffs and leg cuffs, and then, while he was subdued, "violently assaulted [him], with punches, kicks and excessive pepper spray."  The "Defendant(s) got on [Plaintiff's] back and twisted [his] right hand causing (2) broken fingers." Plaintiff's hair was pulled up and held while a sergeant "violently stomped [Plaintiff's] head smashing [his] jaw into the concrete [and] inflicting a laceration that required several stitches."  Plaintiff was then placed face down onto a gurney, while still in leg and hand cuffs, and strapped down.  A sergeant climbed on top of Plaintiff, "spread [Plaintiff's] buttocks and inserted pepper spray into [his] rectum."  Plaintiff then "requested medical," but "the torture continued."  As a result, Plaintiff alleges, he suffered a debilitating jaw injury, two broken fingers, stitches in his chin, limited function in his right hand, emotional trauma, PTSD, and pain from the pepper spray.

In Count Two, Plaintiff asserts a threat to safety claim, alleging that "[t]he Director and all Defendant(s) were deliberately indifferent when he failed to train his subordinates by implementing a policy to recognize mental health problems not protective segregation problems."  As a result of this deliberate indifference, Plaintiff alleges, Defendant Banghart allowed another inmate to talk to Plaintiff, "making [the other inmate] believe the reason [Plaintiff] requested suicide watch was for protection."  Word spread across the prison that Plaintiff was seeking protection and the inmates plotted against Plaintiff, causing him to become paranoid and psychotic, and ultimately leading him to "barricade" his cell.  As a result, Plaintiff was sent to Special Management Unit II (SMU II), "where officers knew or should have known [Plaintiff] was suffering from mental illness, but instead brutally assaulted [him]" both physically

and sexually, "breaking [Plaintiff's] fingers and causing several stitches to [his] jaw." Plaintiff alleges he suffered a jaw injury, two broken fingers, emotional and psychological trauma, and burned skin from the pepper spray.

It appears, based on several exhibits attached to the Complaint, that the events that form the basis of Plaintiff's claim occurred in April 2010. For example, in an Inmate Letter dated May 18, 2010 and addressed to CO III Lipkowitz, Plaintiff wrote that he was taken to SMU II on April 17, 2010 and that, while he was there, "the COs used excessive force," "tortured [Plaintiff] with mace," and sexually assaulted him. In another Inmate Letter dated February 19, 2014, Plaintiff wrote that he was attempting to informally resolve an issue relating to an incident in April 2010 where he was beaten and stomped by COs, Sergeants and SSU staff. A Memorandum dated April 4, 2014 from E. Bonkowski, a Special Investigator from the Criminal Investigations Bureau, stated that the "date of the incident claimed by you, which was 4-17-2010, was confirmed referenced [*sic*] several staff members involved with your incident. The totality of the circumstances was deemed unfounded/insufficient evidence to support your allegation."

### III. Statute of Limitations

On August 21, 2014, this Court issued an order noting that Plaintiff's Complaint appeared to have been filed outside the relevant statute of limitations period and requiring Plaintiff to show cause why his Complaint should not be dismissed on that basis. Plaintiff filed a response indicating that "he was unable to exhaust his Administrative Remedies . . . until an investigation had been conducted by the Criminal Investigations Bureau (CIU)," and that his "request to be seen by CIU was ignored and his inmate letters thrown away." Under Arizona law, the statute of limitations period is tolled during mandatory exhaustion of administrative remedies. *See Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005); *Arizona Dep't of Revenue v. Dougherty*, 29 P.3d 862 (Ariz. 2001); *Third & Catalina Assoc. v. City of Phoenix*, 895 P.2d 115, 119 (Ariz. Ct. App. 1994); *see also* Ariz. Rev. Stat. § 12-821.01(c) (cause of action required by law or

contract to be submitted to administrative review process does not accrue until process exhausted)).  At this stage of the proceedings, Plaintiff's allegation that his filing was delayed as the result of a protracted administrative exhaustion process will satisfy the liberal pleading standard applied to *pro se* filings.  *See Hebbe*, 627 F.3d at 342.

**IV.     Failure to State a Claim**

    **A.     Defendant Ryan**

Plaintiff has failed to state a claim against Defendant Ryan under § 1983.   To state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  For an individual to be liable in his official capacity, a plaintiff must allege that the official acted as a result of a policy, practice, or custom.  *See Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2001).  Further, there is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights does not make him liable.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor in his individual capacity "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

Further, to state a claim for failure to train, a plaintiff must allege facts to support that the alleged failure amounted to deliberate indifference. *Cannell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998).  A plaintiff must allege facts to support that not only was particular training inadequate, but also that such inadequacy was the result of "a 'deliberate' or 'conscious' choice" on the part of the defendant.  *Id*. at 1213-14; *see Clement v. Gomez,* 298 F.3d 898, 905 (9th Cir. 2002) (a plaintiff must allege facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is [so] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy[]makers . . . can reasonably be said to

TERMPSREF

1  have been deliberately indifferent to the need." (quoting *City of Canton v. Harris*, 489
2  U.S. 378, 390 (1989))).      Although Plaintiff asserts in Count Two that Defendant Ryan
3  "failed to implement training procedures" to instruct ADOC staff how to properly
4  identify and treat mental health needs, he fails to allege facts demonstrating that
5  Defendant Ryan was deliberately indifferent to the need for more or different training.  A
6  vague reference to inadequate training protocols will not suffice.  Nor has Plaintiff
7  adequately alleged that Ryan should be held liable in his official capacity because he does
8  not contend that Ryan was acting pursuant to a specific policy or custom.  Accordingly,
9  Defendant Ryan will be dismissed.

        **B.**     **Defendant Banghart**

In Count Two, Plaintiff asserts a threat to safety claim against Defendant Banghart based on an allegation that Banghart "brought a leader inmate to talk the Plaintiff out of suicide watch."  Plaintiff claims that Banghart's "blatant action of labeling the Plaintiff a protection custody seeker[] soon put the plaintiff in harm's way with the prison population."  According to the Complaint, "when word spread across the prison that [Plaintiff] sought protection, the inmates . . . plotted against [him], causing him to become paranoid and psychotic."  Plaintiff alleges that he ultimately barricaded himself inside his cell because "he could not trust ADOC officers or inmates" and, as a result, was sent to SMU II, where he was thereafter assaulted as alleged in Count One.

To state a claim for threat to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks.  *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).  To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety.  *Id*. at 837.  That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Id*.

The Complaint contains no assertion that Defendant Banghart knew that by allowing another inmate to talk to Plaintiff, he was exposing Plaintiff to an excessive risk of harm at the hands of other inmates or through the conduct of ADOC personnel. Accordingly, Plaintiff's allegations against Defendant Banghart are insufficient to state a claim, and Banghart will be dismissed from this action.

### C. Count Two

As noted above, Plaintiff has asserted a threat to safety claim in Count Two that identifies Defendants Ryan and Banghart by name. To the extent Plaintiff intended to allege a threat to safety claim against the remaining Defendants, he has failed to adequately allege such a claim. Accordingly, Count Two will be dismissed in favor of the better-pled allegations in Count One.

## V. Claims for Which an Answer Will be Required

Liberally construed, the allegations in Count One state an Eighth Amendment claim for excessive force against Defendants Sweetman, Zamora, Gutierrez, Ramirez, Harris, Jones, Rodriguez, Victoria, Bope, Swaney, and McClellan. The allegations in Count One, if afforded a liberal construction, are also sufficient to state an Eighth Amendment claim for failure to intervene against Defendants Schell and Emore.

## VI. Warnings

### A. Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

TERMPSREF

### C. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4.  If Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be notified of the requirements for service and copies for the Court that are required for inmates whose cases are not subject to General Order 14-17.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Count Two is **dismissed** without prejudice.

(2) Defendants Ryan and Banghart are **dismissed** without prejudice.

(3) Defendants Sweetman, Zamora, Gutierrez, Ramirez, Harris, Jones, Rodriguez, Victoria, Bope, Swaney, McClellan, Schell, and Emore must answer Count One.

(4) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Sweetman, Zamora, Gutierrez, Ramirez, Harris, Jones, Rodriguez, Victoria, Bope, Swaney, McClellan, Schell, and Emore.

. . . .

. . . .

. . . .

**TERMPSREF**

(5) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(7) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

    (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(10) Defendants must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(12) This matter is referred to Magistrate Judge Mark E. Aspey pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 10th day of November, 2014.

Stephen M. McNamee
Senior United States District Judge

TERMPSREF